IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GOLDEN GATE NATIONAL SENIOR CARE, LLC, et al.,** | : | |
| Petitioners | : | No. 1:15-cv-00174 |
| | : | |
| v. | : | |
| | : | |
| | : | (Judge Kane) |
| **DONA SULPIZIO, as Administratrix for the Estate of ZOPITO JOHN SULPIZIO,** | : | |
| | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

Before the Court are two motions filed by Petitioners Golden Gate National Senior Care, LLC, et al.: a Motion for Clarification of the Court's Order Dated August 14, 2015 (Doc. No. 14), and a Motion to Compel Arbitration (Doc. No. 31). For the reasons that follow, Petitioners' Motion to Compel Arbitration will be granted in part, and Petitioners' Motion for Clarification will be denied as moot.

**I.    BACKGROUND[1]**

Petitioners are a group of partnerships, limited liability companies, and corporations incorporated and domiciled in Delaware, California, and Texas. (Doc. No. 1 ¶¶ 2-11.) Respondent Dona Sulpizio, acting as administratrix of the estate of her brother Zopito Sulpizio, is a citizen of Pennsylvania. (Id. ¶ 13.) Zopito Sulpizio entered one of Petitioners' care facilities in October 2013. (Id. ¶ 19.) Around that time, Zopito Sulpizio signed an alternative dispute resolution clause (the "ADR Agreement" or "Agreement") as part of a broader contract

---

[1] The following background is taken from the allegations of Petitioners' Petition commencing this action. (Doc. No. 1.)

governing his residence in Petitioners' facility. (Doc. No. 1-3 at 5.) Dona Sulpizio, acting pursuant to a durable power of attorney executed in 1993, also signed the agreement on behalf of Zopito Sulpizio. (Doc. Nos. 1-3 at 5; 1-4.) The agreement provides for mediation and then binding arbitration of any disputes arising out of the parties' contract or related to Zopito Sulpizio's stay at Petitioners' facility. (Doc. No. 1-3 at 3-4.) In the agreement, the parties acknowledge, in bold and capital letters, that they "select[ed] a method of resolving disputes without resorting to lawsuits or the courts . . . ." (Id. at 2.) The clause also provides that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("FAA") governs the agreement. (Id. at 4.)

After a dispute arose, however, Respondent initiated a civil action in the Court of Common Pleas for Cumberland County, Pennsylvania, on December 23, 2014, alleging, inter alia, that Petitioners reduced staffing at their facility to something below the minimum level necessary to furnish adequate care to residents. (Doc. No. 1 ¶¶ 30-35.) That action remains pending in state court, and the enforceability of the agreement is before the state court as well. (See Doc. No. 6 at 9.) Petitioners initiated the above-captioned action on January 26, 2015, more than a month after Respondent initiated her action in the Court of Common Pleas, seeking enforcement of the alternative dispute resolution clause.[2] (Doc. No. 1.)

After briefing on Respondent's request for pre-arbitration discovery, this Court issued a

---

[2] The parties to the two actions are the same except that Beverly Fry, a Pennsylvania resident who is Petitioners' local facility administrator, is also named as a defendant in the state court action. (Doc. Nos. 6 at 10-11; 10 at 3.) Ms. Fry does not join Petitioners in this action, so Petitioners have argued that the complete diversity of citizenship between Petitioners and Respondent confers subject matter jurisdiction on the Court. (Doc. No. 1 ¶ 14.) Without diversity, the Court presumably lacks subject matter jurisdiction over this action, because the Federal Arbitration Act does not itself confer subject matter jurisdiction on federal district courts. See 9 U.S.C. § 4.

Memorandum and Order dated August 14, 2015, granting a 60-day period of discovery related to the issue of the validity or enforceability of the agreement, after which the Court directed the parties to file any motions dispositive of Petitioner's petition within 10 days. (Doc. Nos. 12, 13.) On August 18, 2015, Petitioners filed a Motion for Clarification of the Court's Order Dated August 14, 2015 (Doc. No. 14), seeking a stay of the pending state court proceeding. That motion has been fully briefed.

On October 10, 2015, the parties filed a Stipulation (Doc. No. 27), requesting a 30-day extension of the discovery period, until November 16, 2015. The Court approved the extension by Order dated October 13, 2015. (Doc. No. 28.) After the close of discovery related to the issue of the validity or enforceability of the agreement, Petitioners filed their Motion to Compel Arbitration, with supporting brief and exhibits, on November 25, 2015. (Doc. No. 31.) On that same date, Respondent filed her Dispositive Brief in Opposition to Petitioners' Motion to Compel Arbitration, with exhibits. (Doc. No. 30.) Accordingly, Petitioners' Motion to Compel Arbitration is ripe for decision.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides the "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009). Even in light of the FAA, however, arbitration is "strictly a matter of contract." Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. "Thus, in deciding whether

a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527).

As discussed more fully by the Court in its August 14, 2015 Memorandum and Order (Doc. Nos. 13, 14), the appropriate standard for evaluating this motion to compel arbitration is the summary judgment standard from Federal Rule of Civil Procedure 56.  See Guidotti v. Legal Debt Helpers Resolution LLC, 716 F.3d 764, 774-75 (3d Cir. 2013) (application of Rule 56 standard is appropriate when considering motion to compel arbitration where the party opposing arbitration places the validity of the arbitration clause in issue and parties conduct discovery on that issue).

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

**III.   DISCUSSION**

As noted above, in determining whether a party may be compelled to arbitrate, the Court must consider (1) whether there is a valid agreement to arbitrate between the parties, and if so, (2) whether the dispute between the parties falls within the scope of the valid agreement. Flintkote, 769 F.3d at 220 (quotation omitted).

### A. Existence of a Valid and Enforceable Agreement to Arbitrate

In their motion and supporting brief, Petitioners argue that following Court-ordered limited discovery,[3] there is no genuine issue of material fact that Respondent entered into a valid agreement to arbitrate. (Doc. No. 32 at 5-6.) Petitioners maintain that it is undisputed that Respondent signed the agreement and that she had the authority to do so pursuant to the applicable power of attorney. (Id. at 14.)

Respondent counters that the facts elicited during discovery demonstrate that the agreement is both substantively and procedurally unconscionable, and therefore, it is unenforceable.[4] (Doc. No. 30 at 15.) Respondent asks the Court to deny Petitioners' motion outright and find the agreement to arbitrate unenforceable, or, alternatively, to find that a genuine issue of material fact exists as to the validity or enforceability of the agreement. (Id. at 13, 27.)

As the FAA puts arbitration agreements on "an equal footing with other contracts," a

---

[3] Petitioners submitted the following as exhibits to their motion to compel arbitration: (1) the deposition testimony of Dona Sulpizio, (2) the Power of Attorney granting Dona Sulpizio the authority to act for Mr. Sulpizio, (3) the ADR Agreement, (4) the complaint in the pending state court action brought by Respondent against Petitioners, and (5) Petitioners' counsel's letter to Respondent's counsel requesting the withdrawal of the state court complaint in favor of submission of the matter to alternative dispute resolution. (Doc. Nos. 32-1 through 32-5.)

[4] Respondent submitted the following exhibits with her brief in opposition to Petitioners' motion: (1) the ADR Agreement, (2) the deposition testimony of Dona Sulpizio, (3) the deposition testimony of Christina Molina, the facility's admissions coordinator, who presented the admissions paperwork, including the ADR Agreement, (4) the deposition testimony of Tiffany Hawn, the facility employee who countersigned the ADR Agreement, (5) Answers to Respondent's Requests for Admission, (6) JAMS Rules applicable to the agreement, (7) a letter of welcome from Golden Living to Mr. Sulpizio, (8) a copy of proposed Department of Health and Human Services Regulations, and (9) a letter to an administrator at the Department of Health and Human Services from a number of United States Senators. (Doc. Nos. 30-1 through 30-9.)

party may challenge an arbitration agreement's enforceability based on any "generally applicable contract defenses, such as fraud, duress, or unconscionability...." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (construing the FAA as codified at 9 U.S.C. § 2) (citations and internal quotation marks omitted). To the extent that such law is not displaced by the FAA, the Court must apply Pennsylvania law to determine if an arbitration agreement is unconscionable. See Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012) (citations omitted). "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." Id. (citing Salley v. Option One Mort. Corp., 925 A.2d 115, 119 (Pa. 2007)). In discussing these two prongs of unconscionability, the Pennsylvania Supreme Court indicated that it may be appropriate to use a "sliding-scale approach" such that where the unconscionability is very high with regard to one prong, a lesser degree of unconscionability may be required on the other prong. Salley, 925 A.2d at 125 & n.12. "[T]he burden of establishing unconscionability lies with the party seeking to invalidate a contract, including an arbitration agreement." Id. at 129. With that burden in mind, the Court turns to an analysis of the parties' arguments regarding unconscionability.

        **1.**     **Substantive Unconscionability**

Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Quilloin, 673 F.3d at 230 (citations omitted). Petitioners argue that the agreement at issue is valid and enforceable, and point out that the same agreement was found to be valid and enforceable in Golden Gate Nat'l Senior Care, LLC v. Beverly E. Addison & Claudette L. Brooks, ex rel.

Estate of Louise E. McCauley, 2014 WL 4792386 (M.D. Pa. Sept. 24, 2014).[5] (Doc. No. 32 at 15.)

In support of her position regarding the substantive unconscionability of the agreement, Respondent argues that, in the agreement, Petitioners reserve the right to access the courts for themselves, while limiting Respondent's claims to arbitration. (Doc. No. 30 at 19.) Upon review of the "Covered Disputes" section of the agreement, the Court finds that Respondent has overstated the terms of the agreement. The agreement creates an exception from arbitration for claims within the jurisdiction of small claims court, but that exception applies equally to both Respondent and Petitioners.[6] (See Doc. No. 30-1 at 3) ("[i]n addition, the parties are not precluded by this Agreement from seeking remedies in small claims court for disputes or claims within its jurisdiction.")

Respondent next argues that the agreement is substantively unconscionable based on the application of the JAMS Arbitration Rules and Procedures ("JAMS Rules"), as provided by the agreement. Specifically, she argues that the discovery limitations contained in the JAMS Rules restrict her ability to vindicate her claims. (Doc. No. 30 at 20.) An arbitration agreement can be substantively unconscionable if it "alter[s] or limit[s] the rights and remedies available to [a] party in the arbitral forum." Quilloin, 673 F.3d at 230 (citing Edwards v. HOVENSA LLC. 497

---

[5] The same agreement was similarly found to be valid and enforceable in Golden Gate Nat'l Senior Care, LLC v. Beavans, 2015 WL 5000886 (E.D. Pa. Aug. 20, 2015).

[6] The case cited by Respondent in support of her argument, Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538 (E.D. Pa. 2006), is distinguishable from the instant situation, as in that case, the agreement required the plaintiff to submit all claims arising out of the agreement to binding arbitration, but reserved the right for the defendant to maintain an action in court. In addition, that court's finding of unconscionability was based not only on the one-sided court access provision, but the presence of it coupled with severe limitations on discovery. Id. at 547.

F.3d 355, 364 (3d Cir. 2007)).  Respondent argues that the JAMS Rules provide for a heightened discovery standard (i.e., information must be "directly relevant" to the case), and points out that the JAMS arbitrator may arbitrarily "edit or limit the number of [discovery] requests."  (Doc. Nos. 30 at 20-21;  30-6 at 17.)  The Court is unpersuaded by Respondent's argument.  As Petitioners point out, the discovery limitations apply equally to both sides of the dispute, and can be modified by the arbitrator if there is cause to do so.  (Doc. Nos. 32 at 19; 30-6 at 17-18.)  Further, the Court notes that Respondent has failed to point to any caselaw finding that the JAMS process or rules render an arbitration agreement substantively unconscionable.  Accordingly, the Court finds that the limitation of rights and remedies in the arbitral forum is not a basis for a finding of substantive unconscionability.

     Finally, Respondent maintains that the agreement allows her to potentially be saddled with excessive costs and fees if she is unsuccessful in arbitration, pointing to the provision of the agreement permitting the arbitrator to "allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party." (Doc. Nos. 30 at 20; 30-1 at 4.)  Petitioners acknowledge that an arbitration agreement may be substantively unconscionable it if "makes the arbitral forum prohibitively expensive for the weaker party...." Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 284 (3d Cir. 2004). (Doc. No. 32 at 17.)
The party opposing arbitration bears the burden of establishing the costs of arbitration, and the party's inability to pay them.  See Antkowiak v. TaxMasters, 455 F. App'x 156, 160 (3d Cir. 2011) (citing Parilla, 368 F.3d at 283-85).

     The "Costs and Fees" section of the agreement provides as follows:

9

> Where Resident initiates arbitration against Facility, the only fee required to be paid by Resident is $250, which is approximately equivalent to a court filing fee; all other fees and costs, including any remaining JAMS case management fees and professional fees for the arbitrator's services, shall be paid by Facility. Where Facility initiates arbitration, Facility will pay all fees and costs associated with the arbitration other than Resident's attorney fees, if any. The Parties shall bear their own costs and attorney's fees except that the arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party. Notwithstanding this provision, in California the Resident may not be required to pay the fees and costs of Facility if the Resident does not prevail.

(Doc. No. 30-1 at 4.)

Petitioners argue that Respondent cannot meet her burden of proving costs as a basis for unconscionability, as the agreement limits her arbitration costs to $250, the approximate cost of filing a court action. (Doc. No. 32 at 17.) The Court finds that Respondent must do more than point to a provision of the agreement that might, in the discretion of the arbitrator, result in additional costs and fees to her of an unknown amount, in order to meet her burden of pointing to evidence of record establishing the likelihood of excessive costs and her inability to pay them. See Parilla, 368 F.3d at 285 ("loser pays" arbitral costs provision may be substantively unconscionable if party resisting arbitration submits evidence that they cannot meet the financial burden of the arbitral forum). Respondent has adduced no such evidence of financial burden here; accordingly, the cost of the arbitral forum to Respondent cannot serve as a basis for a finding of substantive unconscionability.

Accordingly, for all of the reasons discussed above, the Court finds that Respondent has not met her burden of demonstrating substantive unconscionability. Even considering all facts in the light most favorable to her, Respondent has failed to establish a genuine issue of material fact as to the substantive unconscionability of the agreement.

While Pennsylvania law requires a showing of both substantive and procedural unconscionability to demonstrate the unconscionability of an agreement, and the Court has found that Respondent failed to meet her burden of demonstrating substantive unconscionability, in the interest of completeness, and because the procedural prong is the focus of Respondent's unconscionability argument, the Court will address the parties' arguments regarding procedural unconscionability.

### 2. Procedural Unconscionability

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (applying Pennsylvania law). "A contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision[.]'" Quilloin, 673 F.3d at 235 (quoting Salley, 925 A.2d at 119). In analyzing whether a contract rises to the level of procedural unconscionability, the Court considers several factors: "the take-it-or-leave-it nature of the standardized form of the document[,]" "the parties' relative bargaining positions," and "the degree of economic compulsion motivating the 'adhering' party[.]" Quilloin, 673 F.3d at 235-36 (quoting Salley, 925 A.2d at 125.)

With regard to the first factor, the "take-it-or-leave-it" nature of the form agreement, the terms of the agreement here indicate that it was not a "take-it-or-leave-it" situation. The agreement states in capital letters at the top of the first page that "THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY." (Doc. No. 30-1 at 2.) Respondent's argument and testimony that she believed that the agreement

had to be signed in order for her brother to receive care at the facility (see Doc. No. 30-2 at 8), is belied by the statement at the top of the agreement, as well as the fact that Mr. Sulpizio had already been admitted to the facility some period of time prior to Respondent's execution of the admissions documents, including the ADR Agreement.  (See id. at 7.)  Further, the agreement provides in Section IX that a party signing it affirms her understanding that the execution of the agreement is not a condition of admission to the facility, and that she may revoke her signature within 30 days.  (Doc. No. 30-1 at 4.)  These facts support a finding that Respondent could have rejected the terms of the agreement.  As Petitioners point out, it is undisputed that Respondent signed the agreement, received a copy of it some time after signing it, and never rescinded the agreement.  (Doc. Nos. 32 at 8-9;  30-2 at 8-9.)

The second factor in the procedural unconscionability analysis is the relative bargaining power of the parties.  Quilloin, 673 F.3d at 235-36 (quotation omitted).  This is the real crux of Respondent's argument:  that she was in a stressed state because of the circumstances attendant to admission of her brother into a care facility, and accordingly, was overwhelmed by the paperwork to be signed.  (Doc. No. 30 at 18.)  Further, she maintains that, under those circumstances, the facility admissions coordinator's failure to explain the ADR Agreement to her, and its presence in the midst of a pile of papers to be signed, should result in a finding of procedural unconscionability.  (Id. at 17-18.)

Respondent first argues that her deposition testimony shows that the agreement was "buried inside a 'stack' of complex, and unrelated, admissions documents – all of which had been *stapled together* to form a single, forty-page package," preventing Respondent from recognizing what she was signing.  (Id. at 17.)  As Petitioners point out, a review of

Respondent's deposition testimony indicates that she does not specify the number of pages in the stack of papers that were presented to her, nor is it clear whether the entire stack of admissions papers were stapled together, as she argues in her brief, or whether the four-page agreement was stapled together within the larger stack of papers.  (See Doc. No. 30-2 at 7-8.)  Respondent further argues that the admissions coordinator obscured portions of the agreement from Respondent by dog-earing or Post-it tabbing the signature pages in the stack of documents.  (Doc. No. 30 at 17.)  As Petitioners point out, there is no basis for assuming that any dog-earing or tabbing of signature pages precluded Respondent from reading the substance of the agreement, as Respondent suggests, since the substance of the agreement appears on the first three pages of the four page document, which Respondent does not claim were dog-eared or tabbed.  (Doc. No. 32 at 8.)

Respondent also argues that the admissions coordinator's failure to explain the terms of the agreement to her supports a finding of procedural unconscionability.  (Doc. No. 30 at 18-19.)  The terms of the agreement provide that the signature on behalf of the facility verifies that, prior to signing the agreement, the Respondent had the opportunity to thoroughly read the document, or to have it read to her.  (Doc. No. 30-1 at 5.)  Petitioners point out that Respondent agrees that no one precluded her from reading the agreement, and admits that she "started looking" at the documents.  (Doc. No. 30-2 at 19-20.)  While the Court agrees with Respondent that the ideal circumstance in this situation would have been for the admissions coordinator to ascertain that Respondent thoroughly read and understood the document before signing it, the Court finds that at most, the failure to do so here amounts to a small degree of procedural unconscionability.  See Quilloin, 673 F.3d at 235 ("Contracts cannot be deemed unconscionable simply because of

disparity in bargaining power.... Our role is to distinguish acceptable bargaining situations from those which violate strong public policy.") (internal citations and quotation marks omitted).  The ADR Agreement appears to include a number of safeguards in order to accommodate the disparity in bargaining power between the parties, as it is short (four pages), contains no fine print, and can be easily understood by a person with no legal training.  See Golden Gate Nat'l Senior Care, LLC v. Beavans, 2015 WL 5000886 at *7 (E.D. Pa. Aug. 20, 2015) (finding no unconscionability in identical agreement in part because of these safeguards).

The parties did not offer any argument or evidence on which the Court can evaluate the third factor in a procedural unconscionability analysis - "the degree of economic compulsion" motivating Respondent.  Quilloin, 673 F.3d at 235-36 (quotation omitted).  The Court recognizes the potential for procedural unconscionability in circumstances similar to the instant case.  However, even assuming a small degree of procedural unconscionability on the facts elicited here, given the admissions coordinator's apparent failure to read the agreement to Respondent or to ensure that Respondent thoroughly read the agreement prior to signing it, the Court must use a "sliding-scale approach" in evaluating unconscionability.  Salley, 925 A.2d at 125 & n.12.  Given the absence of substantive unconscionability here, the Court cannot find that Respondent has met her burden of demonstrating unconscionability.  Accordingly, the Court finds that there is no genuine issue of material fact as to the lack of unconscionability of the agreement, and therefore, the agreement is valid and enforceable.

### B. Scope of the Agreement

As noted above, after determining the existence of a valid agreement to arbitrate, the Court must consider "whether the dispute between the parties falls within the scope of the valid

agreement." Flintkote, 769 F.3d at 220 (quotation omitted). The Court applies Pennsylvania law to determine the scope of the ADR Agreement. See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475-76 (1989) (citing Perry v. Thomas, 482 U.S. 483, 493 n.9 (1987)). By its terms, the Agreement covers "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility ... that would constitute a legally cognizable cause of action in a court of law...." (Doc. No. 30-1 at 3.) The language is extremely broad and appears to require arbitration of the state court negligence action brought by Respondent. However, it is clear that "only parties to an arbitration agreement are subject to arbitration." Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 661 (Pa. Super. Ct. 2013) (citation omitted); see also CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 137 (3d Cir. 2004) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so.") (citation omitted). Therefore, the ADR Agreement only encompasses claims asserted on behalf of Mr. Sulpizio.

Counts 1 and 2 of of the state court action initiated by Mr. Sulpizio's estate involve claims of negligence brought pursuant to Pennsylvania's survival statute, 42 Pa.C.S. § 8302. (See Doc. No. 32-4 at 22-35.) The statute provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S. § 8302. "A survival action ... is not a new cause of action but one which 'merely continues in [the decedent's] personal representatives the right of action which accrued to the deceased at common law because of the tort.'" Tulewicz v. SEPTA, 606 A.2d 427, 431 (Pa. 1992) (citing Pezzulli v. D'Ambrosia, 26 A.2d 659 (Pa. 1942)). Accordingly, the survival claims belong to Mr. Sulpizio, and therefore fall within the scope of

15

the ADR Agreement.

Count 3 of the state court action asserts a claim of negligence pursuant to Pennsylvania's wrongful death statute, 42 Pa.C.S. § 8301. (See Doc. No. 32-4 at 36-37.) That statute provides, in relevant part:

> An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S. § 8301(a). A wrongful death action "is not the deceased's cause of action." Pisano, 77 A.3d at 658 (citing Moyer v. Rubright, 651 A.2d 1139, 1141 (Pa.Super. Ct. 1994)). A wrongful death claim "may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate.... This action is designed only to deal with the economic effect of the decedent's death upon the specified family members." Id. at 658-59 (citation omitted). In count 3 of the state court action, the estate seeks damages on behalf of Mr. Sulpizio's spouse, son, daughter, and sister for the pecuniary losses they suffered as a result of his death, such as reimbursement of certain expenses, as well as loss of companionship. (Doc. No. 32-4 at 36-37.) Since a wrongful death action does not belong to a decedent, then a decedent may not waive a wrongful death beneficiary's right to a jury trial. Pisano, 77 A.3d at 661-62. Accordingly, "an arbitration agreement signed by the decedent or his or her authorized representative is not binding upon non-signatory wrongful death beneficiaries, and they cannot be compelled to litigate their claims in arbitration." Taylor v. Extendicare Health Facilities, Inc., 113 A.3d 317, 320-21 (Pa. Super. Ct. 2015) (citing Pisano, 77 A.3d at 660-61).

Under these circumstances, Petitioners maintain that the survival claims can be severed from the wrongful death claim and tried in an arbitral forum, while the wrongful death claim remains pending in state court.  (Doc. No. 32 at 19-20.)  To the contrary, Respondent argues that both the wrongful death and survival claims must be tried together in a court of law, pursuant to the Pennsylvania Superior Court's decision in Taylor v. Extendicare Health Facilities, Inc., 113 A.3d 317 (Pa. Super. Ct. 2015), in which the Pennsylvania Superior Court applied Pennsylvania Rule of Civil Procedure 213(e)[7] to essentially invalidate agreements to arbitrate a survival claim when a wrongful death claim is also asserted.[8]  (Doc. No. 30 at 25.)

The Court agrees with Petitioner that Taylor does not preclude bifurcation of the survival and wrongful death claims into separate forums here.  Taylor is distinguishable from the instant case because the arbitration agreement at issue in Taylor selected application of substantive Pennsylvania law to its interpretation and enforcement.  See Taylor, 113 A.3d at 325 (acknowledging express provision for application of Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S. § 7301).  By contrast, the arbitration agreement here explicitly calls for application of the FAA to its interpretation and enforcement.  (See Doc. No. 30-1 at 4, ADR Agreement, Section VI.)

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration

---

[7] Pennsylvania Rule of Civil Procedure 213(e) provides:

> A cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial.

[8] The Pennsylvania Supreme Court accepted review of the Taylor decision on September 23, 2015.

agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  Therefore, the FAA preempts state rules that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).  The FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." Moses H. Cone, 460 U.S. at 20.  Such piecemeal litigation is necessary "irrespective of any concomitant decline in judicial efficiency." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 309 (3d Cir. 2009).  Accordingly, as the wrongful death claim cannot be arbitrated under Pennsylvania law, as stated in Pisano, it is necessary to bifurcate the claims in the state court action for resolution.  See Beavans, 2015 WL 5000886 at *10 (bifurcating survival and wrongful death claims arising in connection with identical ADR agreement to accomplish the goals of the FAA);  Northern Health Facilities v. Batz, 993 F. Supp. 2d 485, 496-97 (M.D. Pa. 2014) (bifurcating survival and wrongful death claims pursuant to the FAA).  The survival claims asserted in the state court action shall be arbitrated in accordance with the valid agreement entered into by the parties.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Petitioners' Motion to Compel Arbitration in part, and deny Petitioners' Motion for Clarification as moot.  An order consistent with this memorandum follows.